UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AFFORDABLE BUILDERS OF AMERICA, INC.,

Plaintiff,

v.

PAUL THOMAS, et al.,

Defendants.

No. 2:22-cv-1381 KJM DB

FINDINGS AND RECOMMENDATIONS

Pending before the court are a motion for default judgment filed by defendant/counterclaimant Paul Thomas and a motion to set aside entry of default filed by plaintiff/counterdefendant Affordable Builders of America ("ABOA"). (ECF Nos. 69 & 77.) The parties' motions were taken under submission on June 27, 2023. (ECF No. 111.) Having considered all written materials submitted with respect to the motions the undersigned recommends that plaintiff's motion to set aside entry of default be denied and counterclaimant's motion for default judgment be granted.

**BACKGROUND**

As previously explained by the assigned District Judge, counterclaimant Paul Thomas owns a 1977 Gates Lear Jet 24E ("Jet"). (ECF No. 61 at 2.) Thomas and counterdefendant Affordable Builders of America, Inc., ("ABOA"), entered into a lease agreement for the Jet

governed by Texas law. (Id.) Pursuant to the lease ABOA was to make monthly installment payments, maintain insurance, pay for servicing, etc. (Id.) On July 28, 2022, counterclaimant sent ABOA a notice of default alleging failure to comply with the terms of the lease. (Id. at 3.) On August 3, 2022, counterclaimant sent ABOA a notice of termination of the lease agreement. (Id.)

On August 4, 2022, ABOA initiated this action by filing a complaint. (ECF No. 1.) ABOA was represented by Henry Klein, appearing *pro hac vice*, and Daniel Lindhardt as local counsel. (ECF Nos. 1 & 5.) On September 2, 2022, Thomas filed an answer and counterclaims for delivery, conversion, and breach of lease. (ECF No. 9 at 16-18.) ABOA did not file a response to the counterclaims. Accordingly, on October 11, 2022, Thomas filed a request for entry of ABOA's default. (ECF No. 23.) The Clerk entered ABOA's default on October 21, 2023. (ECF No. 24.)

After ABOA attempted "to move to proceed without local counsel," on November 2, 2022, the assigned District Judge ordered ABOA to notify the court regarding the status of local counsel. (ECF No. 27 at 1.) Due to ABOA's failure to comply with that order, the assigned District Judge held a hearing on December 9, 2022. (ECF No. 43.) In response to "noncompliance with court orders, withholding of prior disciplinary history, and the lack of local counsel," the assigned District Judge revoked Mr. Klein's *pro hac vice* status. (ECF No. 56 at 4.) The assigned District Judge also granted attorney Lindhardt's oral motion to be relieved as local counsel. (ECF No. 52.) Plaintiff was granted 14 days to obtain new counsel. (Id.) On December 16, 2022, the assigned District Judge granted Thomas's motion for a writ of possession of the Jet. (ECF No. 61 at 9.)

On February 1, 2023, Thomas filed a motion for default judgment. (ECF No. 69.) On February 13, 2023, attorney Galen Gentry filed a notice of appearance on behalf of plaintiff. (ECF No. 74.) On February 15, 2023, ABOA filed an opposition to the motion for default judgment and a motion seeking to set aside the entry of default. (ECF Nos. 76 & 77.) Thomas filed a reply on February 27, 2023. (ECF No. 78.) On March 1, 2023, Thomas filed an opposition to the motion to set aside entry of ABOA's default. (ECF No. 79.)

On March 8, 2023, the assigned District Judge issued an order granting Thomas's motion to dismiss, dismissing ABOA's complaint with prejudice for failure to comply with court orders. (ECF No. 80 at 6.) This matter is now proceeding "only on Mr. Thomas's counterclaims." (Id.) That same day the assigned District Judge referred ABOA's motion to set aside entry of default to the undersigned. (ECF No. 81.) After obtaining further briefing from the parties, the motion for default judgment and motion to set aside entry of default were taken under submission. (ECF Nos. 110 & 111.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

> excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

### I. Plaintiff's Motion to Set Aside Entry of Default

Plaintiff's motion to set aside is brought pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. "Rule 55(c) provides that a court may set aside a default for 'good cause shown.'" Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 925 (9th Cir. 2004) (quoting Fed. R. Civ. P. 55(c)). The good cause standard under Rule 55(c) is the same standard applied to motions seeking to vacate default judgment brought pursuant to Rule 60(b). Id. at 925-26. "To determine 'good cause', a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting Franchise Holding II, 375 F.3d at 925-26).

This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." Mesle, 615 F.3d at 1091. "[D]ue to the strong federal policy in favor of deciding cases on the merits whenever possible, 'judgment by default is a drastic step appropriate only in extreme circumstances[.]'" Francois & Co., LLC v. Nadeau, 334 F.R.D. 588, 596 (C.D. Cal. 2020) (quoting Mesle, 615 F.3d at 1091). However, whether to vacate the entry of default "is committed to the discretion of the district courts" and is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Brandt v. American Bankers Ins. Co. of Fla., 653 F.3d 1108, 1112 (9th Cir. 2011).

#### A. Plaintiff's Conduct

A defaulting party's "conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." Alan Neuman Productions, Inc. v.

Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Neglectful failure to answer as to which the [party] offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional[.]'" TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001), overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147-50 (2001).

Here, plaintiff argues that it did not engage in culpable conduct because default was entered while plaintiff was "represented by its prior counsel, Henry Klein, whose *pro hac vice* admission was revoked by the Court on December 13, 2022[.]" (Pl.'s Mot. Set Aside (ECF No. 77-1) at 4.) However, defendant filed a request for entry of plaintiff's default on October 11, 2022. (ECF No. 23.) Ten days passed before the Clerk of the Court entered plaintiff's default, during which time plaintiff, while represented by *pro hac vice* and local counsel, took no action. (ECF No. 24.)

Then on December 9, 2022, the assigned District Judge revoked Mr. Klein's *pro hac vice* status, granted plaintiff's local counsel's motion to be relieved as counsel, and ordered plaintiff to identify new local counsel within fourteen days. (ECF No. 52.) As of that date, plaintiff still had not taken any action with respect to the entry of default. As noted by the assigned District Judge, the "court gave ABOA and its counsel multiple opportunities and sufficient time to identify new local counsel." (ECF No. 80 at 2.) However, "no counsel appeared on behalf of ABOA until two months after the court's order" revoking Mr. Klein's *pro hac vice* status was granted. (Id. at 4.)

On February 1, 2023, Thomas filed a motion for default judgment. (ECF No. 69.) Fourteen more days passed until ABOA finally filed a motion seeking to set aside entry of default. (ECF No. 77.) That motion was filed four months after Thomas first sought ABOA's default and two months after the assigned District Judge ordered ABOA to identify new local counsel. (ECF Nos. 23 & 52.) While Mr. Klein's conduct was unquestionably poor, ABOA was also represented by local counsel and both attorneys were served with every filing on the court's ECF system. As noted by the assigned District Judge, Mr. Klein has now been relieved and plaintiff's current counsel "has not sought an opportunity to address [plaintiff's] litigation

////

history." (ECF No. 80 at 5.) In this regard, the undersigned finds that plaintiff did engage in culpable conduct.

**B. Meritorious Defense**

With respect to the requirement of a meritorious defense "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." TCI, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]" U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1094 (9th Cir. 2010) (quoting TCI, 244 F.3d at 700); see also In re Stone, 588 F.2d 1316, 1319 n.2 (10th Cir. 1978) ("the purpose of the requirement is to show the trial court that a sufficient defense is assertible"). "[T]he question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Rather, that question 'would be the subject of the later litigation.'" Mesle, 615 F.3d at 1094 (quoting TCI, 244 F.3d at 700).

However, "conclusory statements" are not sufficient, and a "mere general denial without facts to support it is not enough to justify vacating a default or default judgment." Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc., 375 F.3d 922, 926 (9th Cir. 2004). "A complete lack of meritorious defenses itself constitutes an extreme circumstance." U.S. v. Aguilar, 782 F.3d 1101, 1107 (9th Cir. 2015). Setting aside a default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." Hawaii Carpenters' Tr. Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). When the movant makes "no showing of a meritorious defense," it would be "an abuse of discretion to set aside the entry of default." Id.

Here, plaintiff argues that it has a meritorious defense to Thomas's breach of contract claim based upon the argument that Thomas failed to provide plaintiff with "five-day notice and opportunity [to] cure rights under Section 12(a) and 12(b) of the Lease[.]" (Pl.'s Mot. Set Aside (ECF No. 77-1) at 8.) However, plaintiff's complaint alleged that plaintiff "complied with all terms" of the lease until Thomas "suddenly and unexpectedly declared defaults that (i) did not exist or (ii) were easily curable" and "threatened to take possession of the aircraft *without* waiting

for the 30-day curative period to take place." (Compl. (ECF Nol. 1) at 3) (emphasis in original). The assigned District Judge dismissed that complaint with prejudice. (ECF No. 80 at 6.)

"An involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata, regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims." In re Schimmels, 127 F.3d 875, 884 (9th Cir. 1997); see also Johnson v. U.S. Dept. of Treasury, 939 F.2d 820, 825 (9th Cir. 1991) (dismissal for lack of prosecution "treated as an adjudication on the merits"). Moreover, the assigned District Judge has also granted Thomas a writ of possession, holding that Thomas "complied with the parties' agreement," that the lease agreement permitted Thomas "to immediately foreclose and retake possession of the aircraft" for "non-payment of services," and that Thomas had made "a sufficient showing he is entitled to a writ of possession." (ECF No. 61 at 6.)

Plaintiff also argues that it has a meritorious defense to the "conversion claim because the economic loss rule precludes the imposition of tort damages for claims arising from an alleged breach of contract." (ECF No. 77-1 at 8.) "Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Service, Inc., 18 F.3d 323, 326 (5th Cir. 1994). "Whether a claim is based in contract depends on the origin of the duty owed, the conduct that forms the basis for liability, and the nature of the resulting injury." Lincoln General Ins. Co. v. U.S. Auto Ins. Services, Inc., 787 F.3d 716, 725 (5th Cir. 2015).

The economic loss rule may serve as a defense to certain claims. See Bates Energy Oil & Gas v. Complete Oilfield Services, 361 F.Supp.3d 633, 652 (W.D. Tex. 2019) ("economic loss rule is a defense that bars negligence and certain other tort claims"). However, it is also a statement of Texas law that does not appear to be dependent on any factual allegations offered by plaintiff.[1] See Golden Spread Electric Cooperative, Incorporated v. Emerson Process

[1] Moreover, as addressed below, Thomas has clarified that references "to conversion" were "shorthand for the aircraft no longer being airworthy," and that "the amounts being sought are

Management Power & Water Solutions, Incorporated, 954 F.3d 804, 807 (5th Cir. 2020) ("Whether the economic loss rule bars Appellants' tort claims is a question of law.").

In short, it does not appear that plaintiff has a meritorious defense to Thomas's breach of contract claim. Nor does it appear that plaintiff's reference to the economic loss rule can be characterized as an allegation of facts that, if true, would constitute a defense. Under these circumstances, it is far from clear that plaintiff has a meritorious defense.

**C. Prejudice**

"[T]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [counterclaimant's] ability to pursue his claim will be hindered.'" TCI, 244 F.3d at 701 (quoting Falk 739 F.2d at 463). "[T]he delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Thompson v. American Home Assur. Co., 95 F.3d 429, 433-34 (6th Cir. 1996).

In dismissing plaintiff's complaint with prejudice, the assigned District Judge stated:

> Here, "plaintiff[] ha[s] yet to present an excuse for [its] delay that is anything but frivolous." Hernandez v. City of El Monte, 138 F.3d 393, 401 (9th Cir. 1998) (internal marks and citation omitted). ABOA did not: (1) comply with the court's order to identify new counsel within fourteen days, (2) request an extension of time to obtain new counsel or (3) explain why it was unable to obtain new counsel within the time set by the court. Since his appearance, Mr. Gentry [plaintiff's counsel] has not sought an opportunity to address this litigation history. Accordingly, plaintiff has not rebutted the presumption of prejudice[.]

(ECF No. 80 at 4-5.) This analysis remains true. Accordingly, the undersigned finds that counterclaimant would be prejudiced by granting plaintiff's motion.

**D. Conclusion**

In summation, plaintiff has engaged in culpable conduct, failed to clearly articulate a meritorious defense, and plaintiff's conduct has been prejudicial. Considering the relevant factors, the undersigned finds that the extreme circumstances of this action are such that

---

contractual damages, not tort damages." (CC Ren. Opp.'n (ECF No. 86) at 5.) Thus, counterclaimant's motion for default judgment is proceeding only on the breach of contract claim.

plaintiff's motion to set aside entry of default should be denied. See generally Akkelian v. Gevorkyan, 833 Fed. Appx. 467, 468 (9th Cir. 2021) ("Even if the other relevant factors—the merits of the defendant's defenses and the prejudice to the plaintiff—would favor setting aside a default judgment, we have held that the trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default.").

**II. Counterclaimant's Motion for Default Judgment**

**A. Standing**

A district court is "required sua sponte to examine jurisdictional issues such as standing." Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002); see also Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). "Article III standing is a species of subject matter jurisdiction." Coble v. DeRosia, 823 F. Supp. 2d 1048, 1051 (E.D. Cal. 2011). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). Here, the court has subject matter jurisdiction over this action pursuant to diversity and there is no suggestion of any defect with respect to standing.

**B. The Eitel Factors Favor Entry of Default Judgment**

**1) Possibility of Prejudice to the Movant**

The first Eitel factor contemplates the possibility of prejudice to the counterclaimant if a default judgment is not entered. Eitel, 782 F.2d at 1471. Prejudice can be established where failure to enter a default judgment would leave a party without a proper remedy. Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1177 (C.D. Cal 2002). Here, given plaintiff's refusal to appear in good faith in this action, counterclaimant has no alternative for recovery and denying default judgment would leave counterclaimant with no available remedy. Accordingly, the first factor weighs in favor of default judgment.

////

////

**2) Merits and Sufficiency of the Substantive Claims**

The second and third Eitel factors jointly examine whether the counterclaimant has pleaded facts sufficient to establish and succeed upon the claims. Pepsico, Inc., 238 F.Supp.2d at 1175 (citing Kleopping v. Fireman's Fund, 1996 WL 75314, at *2 (N.D. Cal. Feb. 14, 1996)). "Because the second and third factors are so closely related, the [undersigned] examines them together." Electronic Frontier Foundation v. Global Equity Management (SA) Pty Ltd., 290 F.Supp.3d 923, 941 (N.D. Cal. 2017).

The counterclaim at issue here is breach of contract.[2] (CC (ECF No. 9) at 18.) A breach of contract occurs when there is: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." Brooks v. Excellence Mortg., Ltd., 486 S.W.3d 29, 36 (Tex. Ct. App. 2015).[3] Here, accepting the counterclaim's factual allegations regarding liability as true, the counterclaim establishes that the parties entered in a valid contract for the leasing of a 1977 Gates Lear Jet 24E. (CC (ECF No. 9) at 10-11.) First, counterclaimant performed pursuant to the terms of the lease. (Id.) Second, plaintiff breached the lease, specifically by failing to pay for servicing of the Jet and timely rent as required by the contract. (Id. at 11-13.) Third, counterclaimant was damaged as a result of plaintiff's breach. (Id.) The undersigned, accordingly, finds that the counterclaimant has stated a claim for breach of contract.

**3) Sum of Money at Stake**

In weighing the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1176-

[2] As noted above, although the counterclaim asserted separate claims for conversion and claim and delivery, the counterclaim makes clear that those claims are asserted "in the alternative" and that the counterclaimant was seeking "to return possession" of the Jet to counterclaimant. (ECF No. 9 at 8.) The assigned District Judge has already granted counterclaimant a writ of possession for the Jet. (ECF No. 62.) Moreover, counterclaimant has clarified that "references . . . to conversion" were "a shorthand for the aircraft no longer being airworthy" and that the counterclaimant is only seeking "contractual damages." (ECF No. 110 at 24.) Accordingly, counterclaimant's motion for default judgment is proceeding only on the breach of contract claim.

[3] As explained by the assigned District Judge, Texas law applies to counterclaimant's breach of contract claim. (ECF No. 61 at 5; ECF No. 96 at 3-7.)

77. The factor weighs against default judgment when a large sum of money is at stake. Eitel, 782 F. 2d. at 1472.

Here, counterclaimant asserts that "the total value of the case [is] between $730,000 and $952,000[.]" (CC MDJ (ECF No. 69-1) at 6.) While the amount of money at stake is considerable, it is proportional to the seriousness of the plaintiff's conduct. "[W]here the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." Board of Trustees v. Core Concrete Const., Inc., No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012). Accordingly, the undersigned finds that this factor does not weigh against default judgment.

**4) Possibility of Disputed Material Facts**

The fifth Eitel factor examines whether a dispute regarding material fact exists. Eitel, 782 F.2d. at 1471-72. Here, plaintiff failed to respond to Thomas's counterclaim resulting in the entry of plaintiff's default. (ECF No. 24.) "Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." Elektra Entm't Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005). The undersigned, therefore, finds this factor weighs in favor of a default judgment.

**5) Whether the Default Was Due to Excusable Neglect**

The sixth Eitel factor considers whether plaintiff's failure to answer is due to excusable neglect. Eitel, 782 F.2d at 1471-72. This factor considers due process, ensuring defaulting parties are given reasonable notice of the action. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Here, plaintiff was well aware of this action, was represented by multiple counsel, and failed to answer the counterclaim, even after being put on notice of the request for entry of default. Under the circumstances, the undersigned finds that plaintiff's actions were not the result of excusable neglect. See Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion). This factor, therefore, weighs in favor of default judgment.

**6) Policy of Deciding Cases on the Merits**

The seventh Eitel factor considers the courts general disposition favoring judgments on the merits. Eitel 782 F.2d at 1472. The plaintiff's failure to engage in this action in good faith has made a judgment on the merits impossible. Accordingly, this factor does not weigh against a default judgment.

Upon consideration of the Eitel factors, the undersigned finds the factors weigh in favor of granting counterclaimant's motion for default judgment.

**C. Terms of Judgment**

Having found that granting the motion for default judgment is appropriate, the undersigned must now address the issue of damages. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As noted above, upon entry of default, the pleading's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee, 722 F.2d at 1323. Damages may be entered without a hearing where the damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits. Id.

Here, the counterclaim seeks possession of the aircraft, logbooks, and spare parts—or the value of the property—damages, amounts due pursuant to the contract, attorneys' fees and costs. (CC (ECF No. 9) at 18-19.) However, counterclaimant's damages are not liquidated. In this regard, the motion for default judgment filed on February 1, 2023, explains that "[d]uring the pendency of the action, a tree fell upon the aircraft." (CC MDJ (ECF No. 69-1) at 6.) Counterclaimant "is still seeking access to the aircraft to allow for an independent evaluation of the damage[.]" (Id.) Counterclaimant speculates that "the total value of the case [is] between $730,000 and $952,000 depending on the actual value of the aircraft." (Id.)

In supplemental briefing filed on June 23, 2023, counterclaimant offered that plaintiff "submitted to the Court the aircraft's value is alternatively $450,000, $495,000, or $575,000." (Sup. Stat. (ECF No. 110) at 6.) Counterclaimant suggests that "[i]f the Court is dissatisfied with ABOA's stated value of the aircraft, a hearing pursuant to Rule 55(b)(2)(B) would be

appropriate." (Id.) While the issue is not the court's satisfaction with ABOA's stated value of the aircraft but instead the absence of liquidated damages, counterclaimant is correct that a hearing pursuant to Rule 55(b)(2) appears appropriate.

In this regard, Rule 55(b)(2) "authorizes a district court to hold an evidentiary hearing following a default judgment to determine damages." Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir. 1974); see also KD v. Douglas Cnty. School District No. 001, 1 F.4th 591, 601 (8th Cir. 2021) ("Rule 55(b)(2) entrusts the district court with the discretion to decide if a hearing on the issue of damages is necessary following default judgment"); Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1267 (11th Cir. 2003) ("we find no abuse of discretion in the district court's decision to hold an evidentiary hearing to determine damages pursuant to Rule 55(b)(2)"); Dickens v. Taylor, C.A. No. 04-201 LPS, 2015 WL 236852, at *1 (D. Del. Jan. 16, 2015) ("Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may conduct an inquest into the amount of damages to be awarded following entry of a default judgment."); Buttnugget Publishing v. Radio Lake Placid, Inc., 807 F.Supp.2d 100, 112 (N.D. N.Y. 2011) (granting default judgment and ordering hearing on damages).

Accordingly, the undersigned will recommend that this matter be set for a damages hearing pursuant to Rule 55(b)(2).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Counterclaimant's February 1, 2023 motion for default judgment (ECF No. 69) be granted as to liability;

2. This matter be set for a damages hearing pursuant to Rule 55(b)(2); and

3. Plaintiff's February 15, 2023 motion to set aside entry of default (ECF No. 77) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 5, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\aboa1381.mot.set.aside.f&rs